# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **1:14-cr-00158-LJO-SKO-1** |
| **Plaintiff-Respondent,** | |
| | **ORDER ON 28 U.S.C. § 2255 MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE** |
| **v.** | |
| **ANTONIO RENE MARTINEZ,** | |
| **Defendant-Petitioner.** | **(ECF Nos. 35, 36, 44, 45)** |

Antonio Rene Martinez ("Petitioner" or "Martinez") brings a 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence ("Section 2255 Motion"). ECF Nos. 35, 36. On August 29, 2016, Martinez entered an open guilty plea, without entering into a plea agreement, to one count of being a deported alien found in the United States in violation of 8 U.S.C § 1326(a). Martinez states that he received ineffective assistance of counsel in two respects: 1) his attorney incorrectly advised him of the sentencing guideline maximum which caused him to reject a plea agreement and instead enter an open guilty plea to one count for violation of 8 U.S.C. § 1326(a); and 2) his attorney did not advise him of a potential affirmative defense to the charge under 8 U.S.C. § 1326. ECF No. 36 at 4-8. Namely, Martinez contends that his attorney did not advise him that he could collaterally attack the underlying deportation order if he proceeded to trial in this illegal re-entry case. *Id.* at 7. For the reasons discussed below, the Court DENIES the petition.

# I. BACKGROUND

On July 31, 2014, Petitioner was indicted on charges of being a deported alien found in the United States, in violation of 8 U.S.C. § 1326(a) and (b)(2). ECF No. 1. It is alleged that Martinez was deported from the United States on or about June 22, 2005, after being convicted of one or more aggravated felonies on or about December 7, 2001, specifically assault with a deadly weapon in violation of California Penal Code ("CPC") § 245(a)(1). *Id.* Martinez was then found within the State on or about June 15, 2014. *Id.* Martinez was arrested in the Northern District in August 2015 and ordered transported to the Eastern District. ECF No. 3. Petitioner was arraigned on September 10, 2015 and entered a plea of not guilty. ECF No. 4. On August 29, 2016, Martinez entered an open guilty plea, without entering into a plea agreement, to one count of being a deported alien found in the United States in violation of 8 U.S.C § 1326(a). ECF No. 24. He was sentenced on the same day to a 41-month term of imprisonment. *Id.*

At the change of plea hearing on August 29, 2016,[1] the Court inquired whether there was a plea offer and Martinez's attorney stated: "There was an offer, but there is an issue with this case that where Mr. Martinez simply cannot afford to revoke or waive his rights to appeal." ECF No. 42 at 2:14-18. He indicated that Martinez had a state court petition pending to vacate one of his prior convictions. *Id.* at 2:19-3:4.[2] Martinez's attorney explained that he was pleading without an agreement because he could not afford to waive his right to revisit this case either by appeal or by 2255 depending on the result of the state court appeal. *Id.*[3] The Court then asked: "he does realize that if he pleads guilty, he is going to be sentenced before the state court appeal is

---

[1] At the August 29, 2016 hearing, Martinez was present and received the assistance of a Court-certified Spanish language interpreter. ECF No. 42 at 2.

[2] Martinez apparently had two prior conviction that were the subject of the 2005 deportation order, one under CPC § 288 and one under CPC § 245(a)(1). He successfully had the § 288 conviction vacated but the motion to vacate the § 245(a) conviction was denied and was being appealed. *Id.* Martinez also apparently had pending immigration proceedings that relied upon the result of the state court proceedings. *Id.*

[3] The government submitted in its opposition that Defendant received two plea agreements from the government, one fast-track plea and a non-fast track plea. ECF No. 44 at 5. Both plea agreements required defendant to plead guilty to the one count charged in the indictment and required defendant to knowingly waive his right to appeal and right to collaterally attack pursuant to § 2255 his plea, conviction, and sentence. *Id.* Both plea agreements required the government to recommend a two to three level reduction for acceptance of responsibility depending on the offense level. *Id.* The fast track plea agreement additionally required the government recommend an additional two-level departure in the offense level. *Id.*

resolved?" *Id.* at 3:7-10. Martinez's attorney responded: "He fully understands that, yes." *Id.* His attorney further indicated that as to the indictment, the conviction under CPC § 245(a)(1) was the subject of the pending appeal and therefore the conviction at that time remained valid and would be admitted. *Id.* at 4:11-18.

The Court advised Martinez and Martinez confirmed his understanding that the maximum penalty for his case is a $250,000 fine or 20 years of imprisonment or both. *Id.* at 5:7-10. The Court confirmed that Martinez understood that the Court is obligated to consider the federal guidelines in sentencing but not obligated to follow them, and that Martinez would not be able to take the change of plea back if the Court did not follow the guidelines. *Id.* 6:9-15. Martinez indicated he had no questions. *Id.* During the change of plea, Martinez admitted to entering the United States after being deported on or around June 22, 2005, as a result of being convicted of a crime punishable by a term of imprisonment of more than one year; specifically assault with a deadly weapon in violation of CPC § 245(a)(1) on December 7, 2001. *Id.* at 7:25-8:21.

Sentencing was conducted the same day as the change of plea, based on the pre-plea presentence investigation report ("PSR") prepared by probation on September 25, 2015. ECF No. 10; ECF No. 42 at 7:23-8:22. The PSR calculated a total offense level of 21 and a criminal history category of II, resulting in a guideline sentence range of 41 to 51 months.[4] The Court sentenced Martinez to a 41-month term of imprisonment. ECF Nos. 24-25.

On September 1, 2017, Petitioner filed a Section 2255 Motion, claiming he received ineffective assistance of counsel. ECF Nos. 35-36.[5] Included with Petitioner's Section 2255 Motion, Petitioner requested the Court appoint him counsel. ECF No. 36. The Court denied that motion without prejudice on September 25, 2017 and directed the government to file an

---

[4] The guideline range was calculated based on the 2014 edition of the United States Sentencing Guidelines. ECF No. 10, ¶ 6.

[5] Martinez originally filed a motion for reconsideration of the judgment and commitment on March 2, 2017. ECF No. 30. The Court notified him it would construe the motion as a Section 2255 motion and gave him the opportunity to withdraw or to amend it with any further Section 2255 claims before construing it as such a motion. ECF No. 31. On May 18, 2017, Martinez withdrew the request. ECF Nos. 33-34. Martinez then filed the current Section 2255 Motion, received on September 1, 2017, with a request that he be permitted to supplement it. ECF No. 35. On September 11, 2017, he filed a supplement to the motion detailing the basis for his motion. ECF No. 36.

opposition. ECF No. 38. The government filed an opposition to Martinez's Section 2255 Motion and included a declaration from Martinez's counsel, Mr. Kevin Little, as well as other documentary evidence. ECF No. 44. Mr. Little's declaration directly refutes Martinez's assertions about the advice he received both on the potential sentence and on whether he advised Martinez about the possibility of collateral attack at trial to the charge in the indictment. ECF No. 44, Exhibit A, "Little Decl.," ¶¶ 12-18. Martinez replied on December 14, 2017. ECF No. 45. As a result of the factual dispute concerning what Martinez was told by counsel, the Court elected to hold an evidentiary hearing and appointed Martinez counsel for the purpose of the hearing. ECF No. 46. The evidentiary hearing took place on October 15, 2018 and October 19, 2018. ECF Nos. 50, 52.[6]

## II. <u>STANDARD OF REVIEW</u>

### A.    <u>Section 2255</u>

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside, or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed sentence. *Tripati v. Henman*, 843 F.2d 1160, 1162 (9th Cir. 1988). Section 2255 provides four grounds upon which a sentencing court may grant relief to a petitioning in-custody defendant:

> [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack.

28 U.S.C. § 2255(a). Generally, only a narrow range of claims fall within the scope of § 2255. *United States v. Wilcox*, 640 F.2d 970, 972 (9th Cir. 1981). The alleged error of law must be "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v.*

---

[6] After scheduling the evidentiary hearing, the Court learned that although Martinez was sentenced to a 41-month term of imprisonment on August 29, 2016 he was released in June 2018 and deported sometime thereafter. Martinez did not appear at the evidentiary hearing but his appointed counsel was present.

*United States*, 417 U.S. 333, 346 (1974) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of the case *conclusively show* that the prisoner is entitled to no relief.'" *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting 28 U.S.C. § 2255) (emphasis in original). The court may deny a hearing if the movant's allegations, viewed against the record, fail to state a claim for relief or "are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996) (internal quotations omitted), *cert. denied*, 520 U.S. 1269 (1997). While a hearing may be required "[w]here section 2255 motions have been based on alleged occurrences outside the record," no hearing is required if "the issue of credibility can be conclusively decided on the basis of documentary testimony and evidence in the record." *Shah v. United States*, 878 F.2d 1156, 1158 (9th Cir. 1989). Ultimately, "Section 2255 requires only that the district court give a claim careful consideration and plenary processing, including full opportunity for presentation of the relevant facts." *Id.* at 1159.

## B.    Ineffective Assistance of Counsel

The Sixth Amendment guarantees "the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). Ineffective assistance of counsel claims are analyzed under the framework set out by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *Ross v. Stewart*, 32 F. App'x 227, 228-29 (9th Cir. 2002). In *Strickland,* the Supreme Court held that there are two components to an ineffective assistance of counsel claim: "deficient performance" and "prejudice." 466 U.S. at 694. "Deficient performance" means representation that "fell below an objective standard of reasonableness" and requires the movant to show that counsel made errors so serious that she was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687-88; *Stanley v. Cullen,* 633 F.3d 852, 862 (9th Cir. 2011). To demonstrate prejudice, the movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "It is not enough 'to show that the errors had some

conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter,* 562 U.S. 86 (2011) (quoting *Strickland*, 466 U.S. at 693). A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the movant as a result of the alleged deficiencies. *Strickland,* 466 U.S. at 697. The Court is also not required to address both prongs if the defendant makes an insufficient showing on one. *Id.*

The Supreme Court has held that "the two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart,* 474 U.S. 52, 58 (1985). In the context of guilty pleas, the first prong of the *Strickland* test echoes the standard of attorney competence set forth *McMann v. Richardson*, 397 U.S. 759 (1970)*. Id.* at 58-59. "Where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill*, 474 U.S. at 56 (quoting *McMann*, 397 U.S. at 771). "The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill,* 474 U.S. at 59. "In other words, in order to satisfy the 'prejudice' requirement, the Petitioner must show that there is a reasonable probability that, but for counsel's errors he would not have pleaded guilty and would have insisted on going to trial." *Id.*; *see also United States v. Keller,* 902 F.2d 1391, 1394 (9th Cir. 1990); *Glover v. United States*, 531 U.S. 198, 203 (2001) ("[t]he determinative question—whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"—remains unchanged') (citation omitted).

### III. <u>DISCUSSION</u>

Petitioner's Section 2255 Motion argues that he received ineffective assistance of counsel on two grounds. ECF No. 36. First, Martinez argues that his attorney told him the incorrect sentencing guidelines maximum he could receive. *Id.* at 4-6. Specifically, Martinez states that he rejected a fast-track plea deal the government offered recommending a sentence of 24 months because his counsel told him to the reject the offer because "24 months is the maximum he would receive" if he entered an open plea of guilty. Martinez contends if he had known he could

be sentenced to more than 24 months, then he would have accepted the government's plea deal. *Id.* at 5. Secondly, Petitioner claims his attorney's assistance was ineffective, and his guilty plea was not knowing and voluntary, because his attorney did not properly investigate and advise him about an affirmative defense to the charge in the indictment under 8 U.S.C. § 1326. *Id.* at 6-8. Specifically, Martinez states that his attorney, despite knowing that the deportation order was being challenged in independent proceedings as constitutionally infirm, failed to inform him that he could mount a collateral attack on that deportation order should he proceed to trial in this matter. *Id.* at 7. Martinez further states that had he known he could attack the deportation order if he proceeded to trial in this matter, he would have proceeded to trial. *Id.* In passing reference, Martinez also states that his attorney did not file a direct appeal as requested by Martinez but provides no details about this allegation. *Id.* at 8. At the evidentiary hearing, Martinez's counsel pursued this as a basis for granting the Section 2255 Motion. As a result, the Court also addresses the merits of this claim herein.

In response, the government asserts that Petitioner's ineffective assistance of counsel claims have no merit and that the Section 2255 Motion should therefore be denied and dismissed with prejudice. As to the first ground of Martinez's Section 2255 Motion, the government contends only "gross mischaracterizations" of the likely sentence rises to the level of ineffective assistance of counsel and the 17-month difference does not constitute a "gross mischaracterization" of the sentence under Ninth Circuit precedent. ECF No. 44 at 7. The government further contends that Martinez's contention that Mr. Little advised him of a maximum 24-month sentence is not credible based on the declaration submitted by Mr. Little and the Court's advisement at the change of plea hearing that the maximum sentence was 20 years. As to the second ground for Martinez's Section 2255 Motion, the government first contends that Mr. Little did in fact advise Martinez of the possibility of a collateral attack on his removal at trial and second that Martinez was not prejudiced even if Mr. Little failed to advised him of such a defense because he cannot meet the statutory requirements of mounting such an attack under 8 U.S.C. § 1326(d). ECF No. 44 at 8-11.

Pursuant to Mr. Little's declaration, the government submits that Mr. Little properly advised Martinez about the applicable sentencing guidelines range and also advised him of the possibility of collaterally attacking the deportation order if he went to trial. Little Decl. ¶¶ 12-18. Mr. Little's declaration indicates that he was in contact with two other attorneys that were representing Martinez. *Id.* ¶¶ 7-8. One attorney was representing Martinez in state criminal court proceedings and had successfully set aside one of his felony convictions and was actively working to have the other felony conviction (the conviction that was identified in the indictment in this case) set aside on the basis that he was not advised of the immigration consequences of his guilty plea. *Id.* ¶¶ 7-8. The other attorney was an immigration attorney that was appealing the denial of a petition for waiver of deportation and anticipating filing a new immigration petition if his criminal attorney was successful in having his felony conviction for violation of CPC § 245(a)(1) set aside. *Id.* Mr. Little submits that Martinez and his family were uniform in their desire to reject the fast track plea agreement in order to delay the federal proceedings and have a chance in obtaining positive results in his related state court criminal and immigration proceedings. *Id.* ¶ 11. Additionally, Mr. Little's declaration contradicts Martinez's contention that he incorrectly advised him that the sentencing guideline maximum was 24 months. *Id.* ¶¶ 12, 18. Mr. Little submits that he advised Martinez that he was facing as much as 57 months. *Id.* ¶ 18. Mr. Little contends that Martinez's highest priority was to maintain a chance to remain lawfully in the United States, rather than obtaining the lowest sentence, and he made a knowing and voluntary decision to turn down the fast track plea agreement as well as the non-fast track agreement. *Id.* ¶¶ 11, 13, 16-18. Lastly, Mr. Little's declaration directly contradicts Martinez's contention that he was not advised of the possibility of attacking the deportation order at trial. *Id.* ¶ 16.[7]

Because Martinez and his attorney offered conflicting accounts of what Martinez was advised regarding a potential defense and the sentencing guidelines maximum, the Court held an evidentiary to resolve first whether counsel's performance was deficient. ECF No. 46. At the

---

[7] Mr. Little's declaration also attached a number of emails between himself and the AUSA, as well as emails he exchanged with Martinez's state criminal attorney and his immigration attorney. ECF No. 44 at 17-86.

evidentiary hearing, held on October 15 and October 19, 2018, Martinez's attorney also argued that the failure to file an appeal constituted ineffective assistance of counsel. ECF Nos. 50, 52. The Court discusses its findings of fact following the evidentiary hearing as to each ineffective assistance claim in the respective sections below.

### A.   Advice of Counsel as to Maximum Sentencing Guideline Range

Martinez claims that his attorney incorrectly advised him that the applicable sentencing guideline range for his offense was a maximum of 24 months. Martinez received a sentence of 41 months. ECF No. 25.[8] Mr. Little states that he advised Martinez of a sentencing guideline exposure of as much as 57 months. ECF No. 36 at 5; Little Decl. ¶ 18.

Even assuming the truth of Martinez's contention that his attorney advised him incorrectly on the sentencing guidelines maximum, the 17-month disparity in the sentence he received versus what he thought the maximum guideline was would not be grounds for a successful ineffective assistance of counsel claim. "[A] mere inaccurate prediction, standing alone, would not constitute ineffective assistance" unless the prediction constituted a "gross mischaracterization of the likely outcome." *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986) (citations omitted); *Doganiere v. United States*, 914 F.2d 165, 168 (9th Cir. 1990) (finding that three-year disparity between an attorney's sentencing prediction of "not more than twelve years" if defendant pleaded guilty and the fifteen-year sentence defendant in fact received did "not rise to the level of a gross mischaracterization of the likely outcome of his case, and thus does not constitute ineffective assistance of counsel"). Here, even if Martinez's counsel had predicted a maximum sentence of 24 months where Martinez received 41 months, this would not amount to a "gross mischaracterization" of the outcome under Ninth Circuit precedent. *Id.*; *Sophanthovong v. Palmateer*, 378 F.3d 859, 869 (9th Cir. 2004) (60-month difference between presumptive sentence predicted by defense attorney and the actual sentence imposed, where sentence was still "well below the maximum sentence," was not a gross mischaracterization); *Rosenbaum v. United*

---

[8] The Court notes that although Martinez was sentenced to 41 months on August 29, 2016, he was released in June 2018 and deported sometime thereafter. Martinez filed his Section 2255 Motion while he was still in custody and therefore meets the "in-custody" jurisdictional requirement of 28 U.S.C § 2255, which applies at the time the motion is filed. *United States v. Ndiagu*, 591 F. App'x 632 (9th Cir. 2015).

*States*, 290 F. Supp. 70, 71 (M.D. Fla. 1968) (petitioner, whose sole basis for post-conviction relief was that he had understood maximum sentence on plea of guilty would be two years and that he instead received sentence of four years and six months, was not entitled to post-conviction relief), *aff'd*, 413 F.2d 298 (5th Cir. 1969). Accordingly, even if Martinez's allegations are true, the seventeen-month disparity in the predicted and actual sentence does not amount to a gross mischaracterization in the outcome and therefore does not constitute deficient performance under the first prong of the *Strickland* test.

Additionally, Mr. Little's testimony at the evidentiary hearing as to what he advised Martinez, namely that his sentencing exposure was higher than 24 months (and as high as 57 months) and that Martinez's priority was to preserve his appellate rights in order to maintain the best chance to remain lawfully in the United States, was consistent with his submitted declaration and credible. *See* Little Decl. ¶ 18. Mr. Little's testimony directly refutes Petitioner's contentions that he was advised that the sentencing guideline maximum was 24 months. Martinez did not offer any contrary evidence to undermine Mr. Little's credible testimony and in fact his counsel appears to have withdrawn this claim at the hearing by not pursuing it as a ground for relief.[9] Based on the evidence presented at the hearing, the Court additionally concludes that Martinez was correctly advised of his sentencing guideline exposure and that his counsel's performance was factually not deficient. Accordingly, Martinez fails to meet the first prong of the *Strickland* test, *see* 466 U.S. at 689, and the Court need not consider the prejudice prong, since Petitioner is not able to meet the first prong. *See Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002) ("Failure to satisfy either prong of the *Strickland* test obviates the need to consider the other.").

Thus, the Court DENIES Petitioner's Section 2255 motion with regard to his claim that he received ineffective assistance of counsel on his maximum sentencing guideline exposure.

---

[9] At the evidentiary hearing, Martinez's counsel submitted that Petitioner sought relief based on two alternative grounds that each amounted to ineffective assistance of counsel: 1) the failure to advise Martinez about the potential defense to the indictment; and 2) failure to file a notice of direct appeal after being instructed to do so.

## B.    <u>Collateral Attack on Removal Order</u>

Martinez also claims he received ineffective assistance of counsel because his attorney did not advise him of a potential defense to the charge in the indictment under 8 U.S.C. § 1326. ECF No. 36 at 7. Namely, Martinez contends that his attorney did not advise him that he could mount a collateral attack on the underlying deportation order if he proceeded to trial in this matter. *Id.* In this regard, Martinez further claims that his attorney failed to investigate the underlying removal order and inform him that a collateral attack was a viable defense. *Id.* Mr. Little's declaration directly refutes this contention and he states that he did in fact advise Martinez of the possibility of such a defense at trial. Little Decl. ¶ 16. Mr. Little's on the record statements at the change of plea and the emails submitted with his declaration indicate that he was aware of the challenge to the state court conviction and in contact with Martinez's state criminal lawyer and his immigration lawyer. ECF No. 42 at 2-3, Little Decl. ¶¶ 7-11.

In evaluating whether a defendant received ineffective assistance of counsel, "[w]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Elmore v. Sinclair*, 799 F.3d 1238, 1252 (9th Cir. 2015) (quoting *Hill*, 474 U.S. at 59). In a criminal prosecution under 8 U.S.C § 1326, a defendant has a Fifth Amendment right to collaterally attack his underlying immigration removal order in the criminal proceeding "because the removal order serves as a predicate element of his conviction." *United States v. Ubaldo–Figueroa,* 364 F.3d 1042, 1047 (9th Cir. 2004). "To sustain a collateral attack under § 1326(d), a defendant must, within constitutional limitations, demonstrate (1) that he exhausted all administrative remedies available to him to appeal his removal order, (2) that the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review, and (3) that the entry of the order was fundamentally unfair." *Id.* at 1048 (citing 8 U.S.C. § 1326(d)). An underlying deportation proceeding is "fundamentally unfair" if "(1) [a defendant's] due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *Id.* (quoting *United States v. Zarate-Martinez*, 133 F.3d 1194 (9th Cir.

1998)); *see United States v. Muro–Inclan*, 249 F.3d 1180, 1184 (9th Cir. 2001) ("To establish prejudice, [the defendant] 'does not have to show that he actually would have been granted relief. Instead, he must only show that he had a "plausible" ground for relief from deportation.'") (citation omitted).

Martinez's Section 2255 Motion did not offer any facts to establish how or why the entry of the underlying removal order was fundamentally unfair or how it violated his due process rights. Accordingly, it remains wholly unclear whether the alleged failure to advise him of his right to collateral attack may have amounted to ineffective assistance of counsel. Based on the parties' submissions, the Court does not have enough information about the removal proceedings to make a determination about the likelihood of success of such a defense in order to determine if the alleged failure to advise him of the defense could have prejudiced Martinez under the second prong of the *Strickland* analysis.[10] Additionally, because there is a factual dispute regarding what Martinez was advised regarding a potential affirmative defense, the resolution of the first prong under *Strickland* requires the Court to make a credibility determination about disputed facts that occurred off the record. *See Shah*, 878 F.2d at 1158 ("Where section 2255 motions have been based on alleged occurrences outside the record, we have often held that an evidentiary hearing was required"); 28 U.S.C. § 2255(b) (a court must hold an evidentiary hearing on a § 2255 motion "unless the files and records of the case conclusively show that the prisoner is entitled to no relief").

At the evidentiary hearing, Mr. Little testified, consistent with his submitted declaration, that he did advise Martinez of the possibility of collateral attack of the deportation order if he went to trial. He further explained that he discussed with Martinez that there was no valid reason

---

[10] The Court notes that although the government attached certain documents related to Martinez's immigration proceedings to its opposition, there is insufficient information concerning the removal order and deportation proceedings to make a determination of whether the proceedings were somehow fundamentally unfair. ECF No. 44 at 10. The government attached a page concerning the charges against Martinez in the removal proceedings (Exhibit C); an October 23, 2015 order of the immigration court denying a motion to reopen the deportation proceedings (Exhibits D & G); a motion to vacate Martinez's conviction under California Penal Code § 288(a) (Exhibit E); the state court order granting the motion to vacate the conviction (Exhibit F); and the December 30, 2015 decision of the Board of Immigration Appeals denying Martinez's appeal of the decision denying his request to reopen proceedings (Exhibit H). It appears that the document that was transmitted to the Court as Exhibit D is not what is described to be in the government's brief, but is instead a duplicate copy of Exhibit G.

to attack the order at trial while his conviction under CPC § 245(a) was still outstanding. As a result, the defense strategy initially was to delay in order to await the result of the state court proceedings challenging the conviction under CPC § 245(a)(1). Apparently at some point in early May, it became clear that the CPC § 245(a)(1) conviction remained valid without further appeals and therefore Martinez then pled guilty without a plea agreement in order to preserve his right to file a § 2255 motion if he was later successful in challenging the state conviction. Furthermore, Mr. Little testified that while the CPC § 245(a)(1) conviction was still valid, he would not have considered going to trial in this case because Martinez had confessed to the elements of the charge when he was arrested. Again, the Court finds his testimony concerning what he advised Martinez to be credible. Furthermore, the Court finds Mr. Little's representation on the whole appears to have been competent and thorough.

The only evidence Martinez submitted at the hearing on this claim was the testimony of Mr. Little. Martinez's counsel elicited testimony that Mr. Little may not have obtained the entire immigration "A-file" and also did not seek the recording of the deportation hearing that would have been available had he sought it. Instead, Mr. Little relied on the deportation order and other documents that were produced in discovery to conclude that the CPC § 245(a)(1) conviction formed the basis of the removal order. As a result, Martinez's counsel argued at the hearing that there was "ambiguity in the record" as to what happened at the deportation hearing and whether the § 245(a)(1) conviction formed a basis for the removal order. Martinez's counsel argued that Mr. Little needed to get the complete record in order to have an intelligent conversation with his client about whether to attack the deportation order at trial. Martinez has not submitted any authority for the proposition that a competent defense attorney defending in an 8 U.S.C § 1326 action would request all these immigration documents if the other documents indicated that the deportation was based on a valid conviction without any reason to believe that the record would contradict the immigration court's deportation order. Mr. Little testified that the discovery he received in this matter made it very clear that the removal order was based on both the CPC § 288 and § 245(a)(1) convictions and that he had no reason to believe the discovery he received in the matter was otherwise incomplete. Martinez has not established that a failure to retrieve

additional documents under the facts of this case "fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 687-88. At best, this argument amounts to speculation.[11] The argument that there may have been some hypothetical possibility that other documents or the recording of the deportation hearing would have revealed something other than what otherwise clear from the record before Mr. Little, falls short of showing that there was deficient performance. *Toomey v. Bunnell*, 898 F.2d 741, 743 (9th Cir. 1990) (burden on habeas petitioner to show through evidentiary proof that counsel's performance was objectively deficient). Additionally, Martinez did not offer any evidence concerning how he could meet the requirements of 8 U.S.C. § 1326(d) to mount a successful collateral attack, including by failing to present any evidence on how the deportation proceedings were "fundamentally unfair." Accordingly, Martinez has not established that he was prejudiced under the second prong of the *Strickland* analysis even if his counsel's failure to review other immigration documents somehow amounted to deficient performance.

The Court here finds that Mr. Little's performance was not deficient on his advice on a potential defense to the 8 U.S.C. § 1326 charge in the indictment. Thus, the Court DENIES Petitioner's Section 2255 Motion with regard to his claim that he received ineffective assistance of counsel on his ability to collaterally attack the deportation order if he went to trial.

### C.    Failure to File A Direct Appeal

While Martinez did not clearly set forth the failure to file a direct appeal as a ground for ineffective assistance of counsel in his Section 2255 Motion, Martinez's counsel elicited testimony on this point and argued it as basis for relief at the evidentiary hearing. Accordingly, the Court addresses this argument here.

---

[11] It appears Martinez's counsel did not check whether the underlying deportation hearing provided support for this hypothetical scenario. Additionally, the government's opposition submitted the immigration judge's October 23, 2015 decision on the motion to reopen proceedings, which gives every indication that the conviction under CPC § 245(a)(1) did form the basis of the deportation as the immigration court apparently heard testimony on both prior convictions. ECF No. 44, Exhibit G at 3-4.  Additionally, in 2005 the § 245(a) conviction was added as an additional charge of deportability. *Id.*, Exhibit C.

The Supreme Court reaffirmed in *Roe v. Flores-Ortega*, that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." 528 U.S. 470, 477 (2000). The Court applied a modified version of the *Strickland* analysis to determine *when failure to consult* with a client regarding an appeal constitutes deficient performance. The Court defined "consult" to mean "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* at 478. "Counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. The Court further found, with regard to the *Strickland* prejudice prong, "in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484. "[T]he defendant does not have to show that he might have prevailed on appeal to show prejudice, just that he probably would have appealed had his lawyer asked." *United States v. Sandoval-Lopez*, 409 F.3d 1193, 1196 (9th Cir. 2005) (noting that the Supreme Court rejected the Ninth Circuit's per se rule on the prejudice prong of *Strickland* in cases involving failure to file a direct appeal).

First, Martinez has not offered any evidence that he gave specific instructions to his counsel to file a direct appeal. Mr. Little testified that Martinez never asked about filing a direct appeal. Additionally, Martinez does not suggest there were any nonfrivolous grounds for appealing after entering his guilty plea and there is no reason to think a rational defendant would want to appeal given the circumstances. However, Martinez's counsel elicited testimony from Mr. Little that after the sentencing Martinez discussed a desire to withdraw his plea with Mr. Little. Petitioner's counsel argued at the hearing that this request to withdraw his plea could be interpreted as "reasonably demonstrat[ing] . . . that he was interesting in appealing" under *Flores-Ortega*, in part because Martinez was uneducated and therefore would not know what exact legal language to use to ask for an appeal. Counsel has not submitted any authority for the

latter argument. The Court disagrees with this contention under the facts presented here. In determining whether a particular defendant "reasonably demonstrated to counsel that he was interested in appealing[,]" such that counsel had a constitutionally imposed duty to consult with a defendant about an appeal, a court "must take into account all the information counsel knew or should have known." *Flores-Ortega*, 528 U.S. at 480. "Only by considering all relevant factors in a given case can a court properly determine whether . . . the particular defendant sufficiently demonstrated to counsel an interest in an appeal." *Id.*

Mr. Little testified that he never interpreted Martinez's request to withdraw the plea as a request to file a direct appeal in part because there was no meritorious basis for filing an appeal. Additionally, "a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* Here, Martinez entered a guilty plea. The record is also clear that Martinez's number one priority was preserving his immigration status in order to be able to stay in the country if he was successful in vacating his state court conviction or in his pending immigration petition. In fact, the strategy in the case had been to delay in order to see if Martinez would be successful in his pending state court and immigration proceedings. Once the state trial court denied his motion to vacate the CPC § 245(a) conviction, continuing to delay was no longer an option. Moreover, the reason that Martinez entered an open guilty plea without accepting the offered plea agreement was to preserve his right to bring a § 2255 motion if he was ultimately successful in appealing the state court conviction. Given this backdrop, there was no obvious reason why Martinez's dissatisfaction with his sentence and corresponding request to withdraw his plea should have reasonably demonstrated to Mr. Little that Martinez was interested in appealing without any basis to support an appeal. Furthermore, the Court at sentencing specifically advised Martinez of his right to appeal, but instead of making a request to appeal he consistently asked about withdrawing his plea.

Even construing the evidence to find that Martinez demonstrated an interest in appealing, Mr. Little testified that he did in fact consult with Martinez about the advantages and

disadvantages of filing a motion to withdraw his plea and advised against it. Mr. Little explained to Martinez why dissatisfaction with the length of his sentence was not a basis to withdraw his plea and that there was no benefit to withdrawing the plea. Even if Martinez successfully withdrew his plea, he could either go to trial or enter into a new plea deal if the government offered one. If he went to trial on the charge under 8 U.S.C § 1326, he could not successfully challenge the still valid state court conviction at trial, and Martinez had confessed to the elements of the charge when he was arrested. Therefore, withdrawing the plea and going to trial would most likely have resulted in a higher sentence upon losing at trial. If he withdrew his plea instead to enter into a plea deal with the government for a shorter sentence, such plea agreement would likely include a waiver of all his appellate rights and that would be detrimental to him if he was ultimately successful at invalidating his state court conviction under CPC § 245(a)(1).

Under *Flores-Ortega*, "[i]f counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." 528 U.S. at 478. There is no evidence that Mr. Little failed to follow the defendant's "express instructions" because Martinez did not testify or present evidence of what his specific communications with Mr. Little were apart from Mr. Little's testimony. At the hearing, Martinez's counsel presented witness testimony from Irma Martinez, Martinez's sister; Alicia Martinez, his mother; and Alex Garcia, his brother-in-law, about calls or communication they had with Mr. Little or his office staff. Irma Martinez testified that she never spoke with Mr. Little after the sentencing but she claimed that before the sentencing Mr. Little said he was going to appeal. Alicia Martinez testified that she did not personally tell Mr. Little that her son wanted to appeal. Alex Garcia's testimony was both unclear and somewhat contradictory as to the timing of when he spoke with Mr. Little but he stated that Mr. Little told him he was going to appeal at the sentencing. In contrast, Mr. Little credibly testified that none of Martinez's family asked him to file a direct appeal but there was discussion on the withdrawal of his plea. Moreover, Martinez's family's testimony does not weigh credibly on the conversation Mr. Little had with Martinez *after* the sentencing, advising him that a motion to withdraw the plea, as was requested,

was unwise. His family's testimony was unclear as to what, if anything, was communicated to Mr. Little after he conferred with Martinez, and the Court gives it little weight. Petitioner's counsel also submitted exhibits evidencing calls made to Mr. Little's office after the sentencing by Martinez and his family and argued that the flurry of activity in the time leading up to the appeal deadline is circumstantial evidence that Martinez wanted Mr. Little to appeal. The third-party testimony and records of phone calls and messages do not elucidate whether Martinez expressly instructed his counsel to file an appeal in this matter when he spoke with his counsel after the sentencing.

There is evidence that Mr. Little advised his client of the unwisdom and the futility of filing a motion to withdraw the plea. The Court also finds there is insufficient evidence that after this advisement, Martinez continued to insist on filing an appeal, in any form, and that Mr. Little refused. Hence, Martinez has not established deficient performance under the test delineated in *Flores-Ortega* or as interpreted by the Ninth Circuit in *Sandoval-Lopez*.[12] The record shows that Mr. Little "consulted" with Martinez about the futility of filing a motion to withdraw the plea. There is evidence that Martinez called Mr. Little's office a number of times in the three days after sentencing asking to speak to Mr. Little about his "deal." Mr. Little was uncertain as to the timing of when he advised Martinez on the futility of filing a motion in relation to the timing of these calls. In this Court's estimation, this uncertainty does not overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *see, e.g.*, *Mangum v. United States*, No. CIV.A. 05-241, 2006 WL 858076, at *3 (D.R.I. Mar. 27, 2006) ("The Court concludes that under the framework of *Flores–Ortega*, the evidence is insufficient to show any express instructions by Mangum to his counsel to file an appeal, once he was advised that there were no grounds. Rather, the Court finds, based on the comparative testimony and credibility of the witnesses, that Mangum

---

[12] At the hearing, Petitioner's counsel relied solely on *Flores-Ortega* and *Sandoval-Lopez* to support the ineffective assistance of counsel claim based on a failure to file a direct appeal. The Ninth Circuit in *Sandoval-Lopez* concluded that an evidentiary hearing is required when a defendant alleges that his attorney refuses to file a notice of appeal when ordered to do so. 409 F.3d at 1198. Therefore, the holding provides minimal guidance in the situation presented here and does not support Martinez's argument for relief since he has failed to demonstrate that he explicitly told his lawyer to appeal and that his lawyer failed to do so.

accepted his counsel's advice not to pursue an appeal but then changed his mind some eight to nine months later"); *Sanzone v. Goode*, No. 10-CV-4431, 2011 WL 3625544, at *3, n.3 (E.D.N.Y. Aug. 12, 2011) (where petitioner had asked to withdraw his plea the court found it was "objectively reasonable" for petitioner's attorney not to file an appeal on petitioner's behalf given that petitioner had pled guilty pursuant to plea bargain and stated on the record he was not coerced into accepting the bargain). Under the totality of the evidence, it appears that Martinez's counsel provided him with competent advice. Martinez has not submitted sufficient evidence that his counsel's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88.

While the failure on the first prong of *Strickland* is sufficient to defeat Martinez's ineffective assistance of counsel claim, Martinez also has not met the prejudice prong. Petitioner's counsel argued at the hearing that no showing of prejudice is required when a petitioner alleges that his counsel failed to file a direct appeal. However, that is not always the case. The Supreme Court recognized in *Flores-Ortega* that

> while the performance and prejudice prongs may overlap, they are not in all cases coextensive. To prove deficient performance, a defendant can rely on evidence that he sufficiently demonstrated to counsel his interest in an appeal. *But such evidence alone is insufficient to establish*, that had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal.

528 U.S. at 486 (emphasis added). In finding that there was prejudice, *Sandoval-Lopez* distinguished the facts of that case from *Flores-Ortega*, stating that "[Sandoval-Lopez] did not merely demonstrate to counsel his interest in an appeal, he explicitly told his lawyer he wanted to appeal and his lawyer refused to do so." 409 F.3d at 1198. That is not the case presented here. Thus, Martinez's proffer that he demonstrated an "interest" in filing an appeal does not satisfy his obligation to show that but for counsel's deficient performance there was a reasonable probability that he would have appealed. The Ninth Circuit in *Sandoval-Lopez,* expressly recognized the difference "where a defendant expresses some interest in appealing but would have been talked out of it if his counsel had explained the unwisdom of such a decision." 409 F.3d at 1198. The evidence shows that Mr. Little did consult with his client and made a

reasonable effort to discover his client's wish for a lesser sentence but also recognized that Martinez's main priority remained his immigration prospects. After receiving competent advice that neither aim would be furthered by the withdrawal of his plea, it is not clear that Martinez still wanted to file a motion to withdraw his plea or that he communicated express instructions to file one despite the futility.

Thus, the Court DENIES Petitioner's Section 2255 Motion with regard to his claim that he received ineffective assistance of counsel for his counsel's failure to file an appeal.

### D. <u>Certificate of Appealability</u>

A Petitioner cannot appeal from the denial or dismissal of his Section 2255 motion unless he has first obtained a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A certificate of appealability will issue only when a Petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard when the Court has dismissed a Section 2255 motion (or claims within a Section 2255 motion) on procedural grounds, a Petitioner must show that reasonable jurists would find debatable (1) whether the court was correct in its procedural ruling, and (2) whether the motion states a valid claim of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the Court has denied a Section 2255 motion or claims within the motion on the merits, a Petitioner must show that reasonable jurists would find the Court's decision on the merits to be debatable or wrong. *Id*. Based on the preceding analysis, the Court concludes that reasonable jurists may differ with the Court's conclusion that Petitioner failed to make a substantial showing on the denial of a constitutional right with regard to the failure to file a direct appeal. *Id.* at 483. On the other grounds presented by the Section 2255 motion, the Court finds that Petitioner has not made any showing, let alone a substantial one, of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). Accordingly, the Court issues a certificate of appealability with respect to the failure to file a direct appeal and declines to issue a certificate of appealability on the remaining grounds.

# IV. CONCLUSION AND ORDER

For the reason discussed above, this Court DENIES Petitioner's Section 2255 motion to vacate, set aside, or correct sentence. The Court also issues a certificate of appealability with respect to ineffective assistance of counsel claim regarding the failure to file a notice of appeal.

IT IS SO ORDERED.

Dated:   **November 9, 2018**          **/s/ Lawrence J. O'Neill**
UNITED STATES CHIEF DISTRICT JUDGE